IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHERYL R. K.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-cv-549-DGW[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Income Security (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability benefits in September 2015, alleging disability as of May 31, 2014. After holding an evidentiary hearing, an ALJ denied the application on February 26, 2018. (Tr. 12, 26). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1).

---

[1] In keeping with the court's practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 12.

Administrative remedies have been exhausted and a timely complaint was filed in this Court.

### Issues Raised by Plaintiff

Plaintiff raises the following point:

1. The ALJ erred in failing to subject new, complex objective evidence to expert scrutiny instead of unilaterally interpreting it and concluding what it indicated about plaintiff's ability to use her arms and hands.

### Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

perform any other work?  20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show that there are jobs existing in significant numbers in the national economy which plaintiff can perform. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However,

while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

**<u>The Decision of the ALJ</u>**

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. She was insured for DIB through December 31, 2019.

The ALJ found that plaintiff had severe impairments of degenerative disc disease, osteoarthritis, obesity, fibromyalgia, left elbow lateral epicondylitis, and diabetes mellitus.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level limited to standing and/or walking for a combined total of two hours out of an eight hour workday, occasionally climbing ramps and stairs, never climbing ladders, ropes, or scaffolding, occasionally balancing, stooping, kneeling, crouching, and crawling, frequently, but not constantly, reaching in all directions bilaterally, and frequently, but not constantly, handling and fingering bilaterally.

The ALJ said plaintiff is unable to perform any past relevant work, such as her work as a commercial cleaner. Based on the testimony of a vocational expert, the ALJ concluded that plaintiff was not disabled because she was able to do jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to plaintiff's arguments.

1. **Agency Forms**

Plaintiff was born in 1970 and was 47 years old on the date of the ALJ's decision. (Tr. 194).

In a Function Report submitted in October 2015, plaintiff said she has shoulder and joint pain. Grasping and holding her arm above her head causes pain. She helps her daughter get ready for and get to school, and she does some housework with the help of her husband. She said she was able to pick things up and put her arms above her head before her conditions. She said her shoulders affect her sleep, and her arm problems affect her daily personal care. She said she makes meals, but she cannot use one hand to remove a cookie sheet from the oven or open cans because it causes her pain or she has to ask for help. (Tr. 226-228). She said her conditions affect her lifting, reaching, completing tasks, and use of her hands, among other things. (Tr. 231). She said reading causes shoulder pain, said her hands go to sleep and feel like pins and needles, she has trouble making a fist at times, and has a hard time opening things. (Tr. 233).

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in October

2017. The ALJ asked counsel if he knew of any outstanding evidence. Counsel said there were records of treatment plaintiff recently underwent at the Arthritis Clinic. (Tr. 35).

Plaintiff testified and said she has shoulder pain that makes her unable to raise her arms above her head for long. (Tr. 41-42). She said she participated in physical therapy for her left elbow pain because she was unable to straighten it all the way out. She said the physical therapy helped, but the pain came back after a few days. She said she stopped going because she had trouble affording the copays. She said she was referred to a pain clinic, but she refused the steroid shot because she fears them and you have to continually get them. (Tr. 44-45). Plaintiff said she helps her daughter and stretches in the morning, she does about thirty percent of the housework, and she no longer does any yard work or gardening. She said the pain goes from her shoulders into her elbow and then into her hands and fingers. She said her fingers go numb and feel like pins and needles. She said she regularly drops things, has trouble opening things like pickle jars, and said her strength has weakened. (Tr. 47-49).

### 3. Relevant Medical Records

Plaintiff presented to Lawrence Speir, a chiropractor, two times between June and August 2014 complaining of right and left posterior shoulder pain and right and left posterior elbow aching, stiffness, and soreness. Dr. Speir's goals included relieving the symptoms, increasing active range of motion, and decreasing

the pain, spasms, and swelling.  Plaintiff reported feeling better.  Dr. Speir recommended plaintiff use heat and Biofreeze on the affected areas and that she return twice a week for two weeks, then once a week for three weeks.  (Tr. 373-376).

Plaintiff presented to Pam Miller, a Doctor of Nursing Practice, on November 10, 2014, and her assessment included myalgia based off soft tissue exams that revealed possible fibromyalgia.  DNP Miller ordered a Lyrica trial for a month.  A connective tissue exam revealed sixteen out of eighteen total tender points and discomfort in the left and right posterior shoulders.  (Tr. 339, 341).

Plaintiff presented to Dr. Speir five times between March and August 2015 complaining of intensity, pain, stiffness, and soreness in her right and left anterior and posterior shoulders.  Goals included increasing active range of motion, ability to perform activities of daily living, and decreasing muscle spasms, swelling, symptoms, pain, and inflammation.  Plaintiff reported feeling better.  Dr. Speir recommended plaintiff put heat and Biofreeze on the affected areas and recommended plaintiff return twice a week for a few weeks and then reduce her appointments to once a week.  (Tr. 363-370).

Plaintiff saw Tara Horrall, a chiropractor, at Kennard Clinic of Chiropractic, PC in April 2015.  Dr. Horrall noted plaintiff has constant sore and aching joints, and she noted plaintiff had dull aching and swelling in her shoulders and hands.  (Tr. 328-330).  Plaintiff indicated she had constant pain in between her shoulders, constant pain or numbness in shoulders, arms, elbows, and hands, and occasional

swollen joints.  (Tr. 332).

In April 2015, plaintiff completed a "Fibromyalgia Centers of America Fibromyalgia Impact Questionnaire (FIQ)" in which she reported "Mostly" for shopping, laundry, cooking, dishwashing, vacuuming, making the beds, visiting friends, yard work, driving, and climbing stairs within the last week.  She also reported occasionally walking several blocks.  She reported feeling good two out of the last seven days and reported fibromyalgia did not make her miss work or housework in the past seven days.  (Tr. 334).

On February 28, 2017, plaintiff presented to the Pain Center of Fairfield Memorial Hospital and saw Sridhar Bhaskara, M.D., a pain management specialist. (Tr. 462).  Plaintiff reported pain all over her body and pain that radiates into her shoulders.  Upon examination, her shoulders were nontender.  Dr. Bhaskara's impression consisted of fibromyalgia, he recommended physical therapy, and plaintiff refused injections.  (Tr. 464-465).

On July 25, 2017, plaintiff presented to Karsten Slater, M.D., an orthopedist, complaining of left elbow pain.  Plaintiff reported the pain started about two months prior when she woke up and was unable to straighten out her arm or pick up any amount of weight without pain shooting into her fingers.  She described her pain level as an eight out of ten, throbbing, and shooting.  She said being very active and doing a lot with her arms aggravated it.  She reported wearing a tennis elbow strap but thought it made it worse.  She reported intermittent tingling in her fingers, pain in her shoulder, and using IcyHot.  (Tr. 419).  She was positive for

numbness in extremities. Dr. Slater noted plaintiff's elbow was tender with resisted wrist extension, finger extension, supination and reverse curl. He noted her wrists were normal and pain free. Dr. Slater noted mild to moderate osteoarthritis most significant at the medial portion of the trochlea[4], ordered an x-ray of her elbow, recommended physical therapy, showed plaintiff how to properly put on the tennis elbow strap, suggested plaintiff use a wrist brace for sleeping, and offered topical Voltaren gel. (Tr. 421-423). That same day, plaintiff underwent an x-ray of her left elbow, and the impression indicated no acute abnormality or fracture. (Tr. 418).

Plaintiff presented to DNP Miller on July 26, 2017, and DNP Miller noted plaintiff had full range of motion, plaintiff said she has tingling in her hands, and plaintiff was wearing a nerve band to help with pain as directed by her orthopedist. DNP Miller's assessment included left elbow pain, and she recommended plaintiff continue to follow orthopedic orders, take medication, and do physical therapy to help with the pain. (Tr. 430, 432).

Plaintiff presented to Dr. Slater on July 28, 2017, complaining of left elbow pain and a reported history of her condition that was the same as her appointment on July 25, 2017. (Tr. 419, 467). Plaintiff reported numbness in her extremity. Dr. Slater's exam of plaintiff's elbow revealed wrist tenderness with resisted wrist

---

[4] Trochlea refers to, "A surface on the distal humerus that articulates with the ulna." https://medical-dictionary.thefreedictionary.com/trochlea+of+the+elbow, visited on February 11, 2020.

extension, finger extension, supination and reverse curl. A wrist exam revealed normal active factors and active pain free range of motion. Dr. Slater's assessment included lateral epicondylitis[5], mild to moderate osteoarthritis, spurring, and ulnar exostosis[6]. He recommended physical therapy, demonstrated proper application and adjustment of the tennis elbow strap, suggested a wrist brace for sleeping, and offered Voltaren gel. (Tr. 468-470).

On August 8, 2017, plaintiff presented to Tanea St. Ledger, a physical therapist, complaining of left elbow and shoulder pain, tingling in her fingers, and pain with lifting and gripping. She rated her pain at a three out of ten at best, a five out of ten currently, and a ten out of ten at the worst. Plaintiff was positive for lateral epicondylitis and cubital tunnel syndrome[7]. PT St. Ledger noted plaintiff was very tender over her wrist extensors. PT St. Ledger's assessment included pain and limited range of motion in plaintiff's shoulders, mild impingement of the left shoulder, decreased joint mobility, decreased strength, and tone in wrist extensors. PT St. Ledger's plan included physical therapy one to two times per week for six weeks. (Tr. 535-537).

---

[5] Lateral epicondylitis refers to, "A condition associated with tennis playing in which there is no reduction in range of movement or pain when the joint is moved passively, which is painful when actively moved." https://medical-dictionary.thefreedictionary.com/lateral+epicondylitis, visited on February 11, 2020.

[6] Exostosis refers to, "A benign new growth projecting from a bone surface and characteristically capped by cartilage." https://medical-dictionary.thefreedictionary.com/exostosis, visited on February 11, 2020.

[7] Cubital Tunnel Syndrome refers to, "A group of symptoms that develop from compression of the ulnar nerve within the cubital tunnel at the elbow; can include paresthesia into the fourth and fifth digits and weakness of some of the intrinsic muscles of the hand." https://medical-dictionary.thefreedictionary.com/cubital+tunnel+syndrome, visited on February 11, 2020.

Plaintiff presented to Ahmed Mohamed M.D., an orthopedic surgeon, at the Egyptian Spine Clinic on September 11, 2017, complaining of generalized joint pain and ongoing shoulder pain over the past several years that became worse over the past couple years and months. She described the pain as aching and throbbing associated with pins and needles tingling at different places. She rated the pain at a five out of ten and at a ten out of ten with activities. Dr. Mohamed's assessment included generalized shoulder pain. Dr. Mohamed's plan included referring plaintiff to Dr. Akhter for evaluation of arthritis and generalized bone pain. (Tr. 509-511).

Plaintiff presented to PT St. Ledger on September 25, 2017, complaining of left elbow pain, shoulder pain, tingling in her fingers, and pain with lifting and gripping. Plaintiff reported doing better, said heavy gripping increases her pain, and said she wants to continue on her own due to her co-pay. Plaintiff again reported her pain as a three out of ten at best, five out of ten currently, and ten out of ten at worst. PT St. Ledger said plaintiff's pain is her greatest deficit, but it is inconsistent and situational. PT St. Ledger also stated plaintiff is unable to grip or carry heavy items, yet her overall function has improved. Plaintiff's listed problems consisted of decreased range of motion in her elbow and shoulder, decreased joint mobility, decreased strength, and tone in wrist extensors. (Tr. 538-539).

Plaintiff presented to Iqbal Akhter, M.D., a rheumatologist, on September 27, 2017, for further evaluation of polyarthralgias, especially involving the joints of the

hands and wrists. Upon physical examination, plaintiff's wrists showed some squeeze tenderness, the shoulders showed good range of motion, and the elbows looked fine. Dr. Akhter ordered x-rays of plaintiff's hands. (Tr. 545). Plaintiff underwent an x-ray of her right and left hands that same day. The x-ray of her right hand revealed, "No acute fracture, dislocation or destructive process. No osseous[8] erosive changes. No significant osteoarthritis. Mild soft tissue swelling of right hand." The x-ray of her left hand revealed, "No acute fracture, dislocation or destructive process. No osseous erosive changes. Fracture proximal phalanx of fifth digit. Mild soft tissue swelling of left hand. Mild osteoarthritic changes of first MCP joint." (Tr. 516). The diagnosis was Rheumatoid arthritis. (Tr. 558).

### 4. State Agency Medical Consultant

Calixto Aquino, M.D., a family medicine physician, served as the state agency medical consultant. He said plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, push and/or pull without limitation other than shown for lift and/or carry, but said plaintiff had no manipulative limitations. He noted how plaintiff said she has trouble raising her arms, has pain while cooking, does chores, and has limitations with using her hands. (Tr. 76-77).

## Analysis

Plaintiff's main assertion is that the ALJ found plaintiff capable of frequent reaching, handling and fingering with her bilateral upper extremities without having

---

[8] Osseous refers to, "of the nature or quality of bone; bony." https://medical-dictionary.thefreedictionary.com/osseous, visited on February 11, 2020.

a state agency consultant review the recent objective medical evidence regarding plaintiff's arms and hands. Therefore, plaintiff argues the ALJ played doctor by interpreting this medical evidence and coming up with the RFC finding on his own.

To the extent that plaintiff is arguing that the ALJ erred by crafting his own RFC rather than relying on a medical opinion, her point is rejected. The ALJ "must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions. . . ." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). The determination of RFC is an administrative finding that is reserved to the Commissioner. 20 C.F.R. §404.1527(d)(2).

Citing *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018), plaintiff argues that the ALJ erred by not having a medical expert review the July 25, 2017, August 8, 2017, and September 11, 2017, medical records before the ALJ came to a conclusion regarding plaintiff's ability to reach, handle and finger. However, this case is different from *McHenry* in that plaintiff's indicated medical records from 2017 contained no dramatic objective medical evidence that would need reviewed by a medical professional.

Here, Dr. Aquino reviewed the record on January 28, 2016, and the ALJ gave Dr. Aquino's opinion "significant weight." (Tr. 24, 77). Plaintiff then underwent additional treatment and an x-ray of her left elbow on July 25, 2017, which revealed no acute abnormality or fracture. (Tr. 418-424). Plaintiff saw a physical therapist regarding her elbow, shoulder, and hand pain on August 8, 2017, and her

complaints remained. (Tr. 535-537). Additionally, plaintiff presented to Dr. Mohamed at the Egyptian Spine Clinic on September 11, 2017, and his assessment stated plaintiff's history examination of radiographic findings "is compatible with generalized bone pain…and shoulder pain." (Tr. 511). Notably, the ALJ did not rely on his own interpretation of the medical records. Rather, the medical records presented after Dr. Aquino's review were not objective evidence of a dramatic nature which would require further review by a medical professional. The additional medical records concerned one x-ray and two appointments of which no significant tests were done. The only imaging done consisted of an x-ray that revealed no acute abnormality or fracture. This distinguishes this case from cases in which the Seventh Circuit found that the ALJ erred in interpreting MRI results for himself. See, e.g., *Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018); *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018). Here, the ALJ considered the medical evidence and formulated an RFC assessment based on the record as a whole without relying on his own lay interpretation of the medical evidence. That is the ALJ's proper role. 20 C.F.R. §404.1527(d)(2).

Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence. She has not identified a sufficient reason to overturn the ALJ's conclusion. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester*, 920 F.3d at

510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE: February 20, 2020.**

                                    **DONALD G. WILKERSON**
                                    **UNITED STATES MAGISTRATE JUDGE**